IN THE CIRCUIT COURT IN AND FOR ESCAMBIA COUNTY, FLORIDA

RANADA COOKS,

      Plaintiff,

vs.

                                  Case No.:   2020 CA 000343

**ANDREA MINYARD; GULF COAST
AUTOPSY PHYSICIANS, P.A.; TIMOTHY J.
GALLAGHER; CORPORAL THOMAS
PASCHAL; TROOPER CHAD LYNCH;
SERGEANT RANDLE PADGETT; FAITH
CHAPEL FUNERAL SERVICES, LLC; and
TRACY MORTON MEMORIAL CHAPEL, LLC,**

      Defendants.

_____/

# FIRST AMENDED COMPLAINT

Plaintiff, Ranada Cooks (hereinafter referred to as "Plaintiff"), by and through undersigned counsel, upon information and belief, alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages in excess of the minimum jurisdictional limits of this Court.

2.    Defendants and/or their agents performed the acts and/or omissions that make the basis of this action between July 29, 2019 and August 2, 2019, in Escambia County, Florida.

3.    Part of this action arises under and is brought pursuant to 42 U.S.C. § 1983 to remedy the deprivation, under color of state law, of rights guaranteed by the

Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida. The Court has concurrent jurisdiction with federal courts to enforce a § 1983 action. See Lloyd v. Page, 474 So. 2d 865 (Dist. Ct. App. Fla. 1985).

4.     This cause of action arose in Escambia County, Florida. Therefore, venue is proper under Fla. Stat. § 47.011.

## **THE PARTIES**

5.     Plaintiff Ranada Cooks is an adult citizen and resident of Atlanta, Georgia, and is the mother of Samara Cooks.

6.     Defendant Andrea Minyard (hereinafter referred to as "Defendant Minyard") was at all times relevant to this suit the Coroner of Escambia County, Florida, and on information and belief, was at all times material to this action an adult citizen and resident of Escambia County, Florida, and responsible for the conduct of the employees and agents of the District One Office of the Medical Examiner for operation in Escambia, Santa Rosa, Okaloosa, and Walton Counties, for establishing customs, policies, and procedures to regulate the conduct of agents and employees of the District One Office of the Medical Examiner, and for ensuring that employees and agents of the District One Office of the Medical Examiner obeyed the laws of the State of Florida and the United States.

7.      Defendant Gulf Coast Autopsy Physicians, P.A. (hereinafter referred to as "Defendant Gulf Coast Autopsy"), is a domestic corporation, organized under the laws of the State of Florida, with its principal place of business at the time of this lawsuit in Pensacola, Escambia County, Florida, and with its current principal place of business in Naples, Collier County, Florida. Upon information and belief, Defendant Gulf Coast Autopsy operated the District One Medical Examiner's Office that encompasses Escambia County and was under the sole auspices, control, and responsibility of Defendant Minyard.

8.      Defendant Timothy J. Gallagher (hereinafter referred to as "Defendant Gallagher) was at all times relevant to this suit the Associate Medical Examiner for the District One Office of the Medical Examiner, and on information and belief, was at all times material to this action an adult citizen and resident of Santa Rosa County, Florida.

9.      Defendant Corporal Thomas Paschal (hereinafter referred to as "Defendant Paschal"), upon information and belief, was at all times relevant to this suit the lead Traffic Homicide Investigator for Case No. FHP-719-09-031, involving the crash that killed Samara Cooks, for the Florida Highway Patrol in Escambia County, and on information and belief, was at all times material to this action an adult citizen and resident of Okaloosa County, Florida, and responsible for the conduct throughout this investigation of the employees and agents of the

Florida Highway Patrol in Escambia County, for enforcing and following customs, policies, and procedures that regulate the conduct of agents and employees of the Florida Highway Patrol in Escambia County, and for ensuring that employees and agents of the Florida Highway Patrol in Escambia County obeyed the laws of the State of Florida and the United States.

10.     Defendant Trooper Chad Lynch (hereinafter referred to as "Defendant Lynch"), upon information and belief, was at all times relevant to this suit the Florida Trooper involved in the on-scene traffic homicide investigation for Case No. FHP-719-09-031, involving the crash that killed Samara Cooks, for the Florida Highway Patrol in Escambia County, and on information and belief, was at all times material to this action an adult citizen and resident of Escambia County, Florida, and responsible for following the customs, policies, and procedures that regulate the conduct of agents and employees of the Florida Highway Patrol in Escambia County and for obeying the laws of the State of Florida and the United States.

11.     Defendant Sergeant Randle Padgett (hereinafter referred to as "Defendant Padgett"), upon information and belief, was at all times relevant to this suit the Traffic Homicide Investigator Sergeant for Case No. FHP-719-09-031, involving the crash that killed Samara Cooks, for the Florida Highway Patrol in Escambia County, and on information and belief, was at all times material to this

4

action an adult citizen and resident of Santa Rosa County, Florida, and responsible for the conduct throughout this investigation of the employees and agents of the Florida Highway Patrol in Escambia County, for enforcing and following customs, policies, and procedures that regulate the conduct of agents and employees of the Florida Highway Patrol in Escambia County, for approving the investigation, and for ensuring that employees and agents of the Florida Highway Patrol in Escambia County obeyed the laws of the State of Florida and the United States.

12.    Upon information and belief, Faith Chapel Funeral Services, LLC (hereinafter referred to as "Defendant Faith Chapel") is a limited liability company organized under the laws of Florida with its principal place of business in the state of Florida. Upon information and belief, Defendant Faith Chapel is a company providing funeral services and operating a funeral home in Florida.  Michael S. Atwood and Teresa K. Atwood were members and/or operators of Faith Chapel Funeral Services, LLC, at the time when agents and/or employees of Faith Chapel Funeral Services, LLC, breached its contract with the Plaintiff and interfered with Samara Cooks' body and her family's right to the preservation and respect of her body.

13.    Upon information and belief, Tracy Morton Memorial Chapel, LLC (hereinafter referred to as "Defendant Tracy Morton") is a limited liability company organized under the laws of Florida with its principal place of business in

the state of Florida. Upon information and belief, Defendant Tracy Morton is a

company providing funeral services and operating a funeral home in Florida. Tracy

Morton was a member and/or operator of Tracy Morton Memorial Chapel, LLC, at

the time when agents and/or employees of Tracy Morton Memorial Chapel, LLC,

embalmed without authorization, mishandled, and interfered with Samara Cooks'

body and her family's right to the preservation and respect of her body.

## STATEMENT OF FACTS

14.     On or about July 29, 2019, the Plaintiff's daughter, Samara

Cooks, passed away as a result of a motor vehicle crash in unincorporated

Escambia County, Florida.

15.     On or about July 29, 2019, another victim, Deleigha Gibson,

passed away as a result of the same motor vehicle crash in unincorporated

Escambia County, Florida.

16.     Samara Cooks and Deleigha Gibson were different ages and

had different heights, weights, and physical appearances.

17.      At the scene of the crash, Samara Cooks and Deleigha Gibson

were recognizable.

18.     Upon information and belief, when the Florida Highway Patrol

arrived at the scene of the crash, the investigating officers found Deleigha Gibson's

picture identification.

19.     Upon information and belief, Defendant Lynch printed several reports including pictures from the Driver and Vehicle Information Database (hereinafter referred to as "DAVID reports"). One of these DAVID reports identified Deleigha Gibson and another identified an individual who was not involved in the crash—to preserve her identity we will refer to this DAVID report as that of "Jane Smith".

20.     Upon information and belief, a corporal with the Florida Highway Patrol wanted to measure the crash site and yelled at Defendant Lynch and the body removal service to hurry up with identification and get out of the way.

21.     It is disputed whether any of the members of the Florida Highway Patrol instructed either Trooper Lynch or the body removal service to identify the bodies as "unknown".

22.     Upon information and belief, there had been some discussion among Defendant Lynch and other members of the Florida Highway Patrol questioning the identities of the two victims of the crash.

23.     Upon information and belief, Defendant Lynch handed Deleigha Gibson's DAVID report to the body removal service as identification for Samara Cooks and handed the body removal service the DAVID report of "Jane Smith" as identification for Deleigha Gibson.

24.     Upon information and belief, at the scene of the crash, within the view of the members of the Florida Highway Patrol and based on their instruction, Deleigha Gibson's body was tagged and marked as "Jane Smith" and Samara Cooks' body was tagged and marked as Deleigha Gibson.

25.     To this day, the information on the Florida Traffic Crash Report is incorrect. For example, Deleigha Gibson's parents were told that their daughter had been thrown a significant distance from the crashed vehicle which caused them extreme stress and anxiety. In actuality, Samara Cooks was the individual ejected from the vehicle. Moreover, Samara Cooks' mother was told that Samara's body remained in the vehicle, when in fact, she was ejected and lay a significant distance from the vehicle, which caused her  extreme stress and anxiety. Despite Defendant Paschal's and Defendant Padgett's knowledge of this error in the Traffic Crash Report, and even after an update was made to note a traffic citation, the Traffic Crash Report still incorrectly identifies Deleigha Gibson as the individual ejected from the vehicle and Samara Cooks as remaining in the vehicle.

26.     Upon information and belief, Defendant Gulf Coast Autopsy obtained control of both victims' bodies, but did not properly identify the bodies. Therefore, the body of Deleigha Gibson remained tagged "Jane Smith" and Samara Cooks remained tagged as Deleigha Gibson throughout the autopsies.

27.     Upon information and belief, Defendant Minyard was responsible for the conduct of the employees and agents of Defendant Gulf Coast Autopsy as well as employees and agents of the District One Office of the Medical Examiner, for establishing customs, policies, and procedures to regulate the conduct of agents and employees of Defendant Gulf Coast Autopsy as well as employees and agents of the District One Office of the Medical Examiner, and for ensuring that employees and agents of Defendant Gulf Coast Autopsy as well as employees and agents of the District One Office of the Medical Examiner obeyed the laws of the State of Florida and the United States. Upon information and belief, Defendant Minyard had inadequate policies and procedures regarding the identification of bodies and/or did not enforce appropriate policies and procedures regarding the identification of bodies.

28.     Upon information and belief, Defendant Padgett and Defendant Paschal were responsible for the conduct of the employees and agents of Florida Highway Patrol, for enforcing customs, policies, and procedures to regulate the conduct of agents and employees of the Florida Highway Patrol, and for ensuring that employees and agents of the Florida Highway Patrol obeyed the laws of the State of Florida and the United States. Upon information and belief, Defendant Padgett and Defendant Paschal had inadequate policies and procedures regarding

9

the identification of bodies and/or did not enforce appropriate policies and procedures regarding the identification of bodies.

29.     Upon information and belief, when Plaintiff Ranada Cooks specifically requested to view and have access to her daughter's body the District One Office of the Medical Examiner, employees and/or agents of Defendant Gulf Coast Autopsy and/or employees and agents of the District One Office of the Medical Examiner refused to allow Plaintiff Ranada Cooks to view her daughter's body, claiming it was office policy.

30.     Upon information and belief, Defendant Gallagher performed the autopsies of Deleigha Gibson and Samara Cooks without properly identifying their bodies. Even after Defendant Gallagher and employees and/or agents of Defendant Gulf Coast Autopsy were informed that there was no "Jane Smith" involved in the collision and that Samara Cooks was in their possession, they simply crossed out the name of "Jane Smith" and marked the body as Samara Cooks, without taking any action whatsoever to properly identify the body. In fact, the body originally marked as "Jane Smith" and secondarily marked as Samara Cooks was actually Deleigha Gibson.

31.     Upon information and belief, Defendant Minyard, Defendant Gallagher, Defendant Gulf Coast Autopsy, Defendant Paschal, and Defendant Padgett did not enact, follow, or enforce the requisite policies and procedures

related to identifying bodies or act in line with their duty to identify the bodies of Deleigha Gibson and Samara Cooks.

32.     Upon information and belief, since the bodies were still switched at the Medical Examiner's Office and during the autopsies, Plaintiff cannot be certain that the information on her daughter's death certificate or in her autopsy report is actually for her daughter or possibly related to Deleigha Gibson.

33.     The Plaintiff released Samara Cooks' body to Defendant Faith Chapel.

34.     Upon information and belief, Defendant Gulf Coast Autopsy, Defendant Minyard, and Defendant Gallagher released Samara Cooks' body to Defendant Tracy Morton which was neither authorized to receive Samara Cooks' body nor was it authorized to prepare or embalm her body.

35.     On or about July 30, 2019, the Plaintiff entered a contract with Defendant Faith Chapel for the embalmment, visitation, and funeral services of their daughter (hereinafter referred to as the "Contract").

36.     The Plaintiff did not release Samara Cooks' body to Defendant Tracy Morton and did not authorize Defendant Tracy Morton to embalm Samara Cooks.

11

37.     Upon information and belief, Defendant Tracy Morton obtained the body of Samara Cooks that was incorrectly tagged as Deleigha Gibson and, without authorization, embalmed and prepared Samara Cooks' body in a way that was not satisfactory to the Plaintiff.

38.     Upon information and belief, when Plaintiff Ranada Cooks asked to see the body of her daughter, Defendant Faith Chapel presented Ranada Cooks with the wrong body, and, in fact, had prepared the body of Deleigha Gibson for viewing as Samara Cooks.

39.     Defendants Tracy Morton and Faith Chapel had all the necessary information to distinguish  the bodies of Samara Cooks and Deleigha Gibson but failed to take the necessary steps to properly identify the bodies and prepare the appropriate bodies for their families' viewing and funerals.

40.     Even after Defendant Faith Chapel obtained the correct body, it performed the preparation in a rushed manner and did not prepare the body in a way that was satisfactory to Plaintiff.

41.     After enduring the wrongs at the hands of Defendants, the Plaintiff suffered nightmares, loss of appetite, anxiety, stress, loss of sleep, and extreme emotional trauma.

## FIRST CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Andrea Minyard

42.      Plaintiff realleges and incorporates by reference each previously stated paragraph 1-41 as if fully set forth herein.

43.      Defendant Minyard, while acting under color of State law and by virtue of the authority vested in her by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

44.      Defendant Minyard and the office under her control participated in the identification, tagging, autopsy, marking, handling, release, and movement of the body of Samara Cooks. Her participation included the crafting and enforcement of the policies and procedures surrounding identifying, tagging, performing autopsies, marking, releasing, and moving bodies in the custody and control of the District One Office of the Medical Examiner.

45.      Defendant Minyard was on notice that Deleigha Gibson and Samara Cooks' bodies were potentially improperly identified because the body removal service noted that the bodies were only "believed to be", abbreviated "BTB," Deleigha Gibson and "Jane Smith." While both bodies were in the

possession of Defendant Minyard, a caller notified the medical examiner's office that the identification of one of the decedents as "Jane Smith" was incorrect as a "Jane Smith" was not involved in the collision at all. In fact, this third party caller was the person who notified Defendant Minyard that they had Samara Cooks' body in their possession. Upon information and belief, Defendant Minyard did nothing to verify the identities of the bodies, merely crossing out the name "Jane Smith" and changing it to "Samara Cooks."

46.     Defendant Minyard was on notice that Deleigha Gibson and Samara Cooks' bodies were improperly identified because they had a photograph of Deleigha that clearly did not resemble the body identified as Deleigha (the body of Samara Cooks) and they had a photograph of "Jane Smith" who clearly did not resemble the body identified as "Jane Smith" (the body of Deleigha Gibson).

47.     Despite notice that the identities were incorrect, Defendant Minyard proceeded with autopsy procedures and preparation of the misidentified bodies, ultimately sending them to the wrong funeral homes.

48.     Defendant Minyard failed to communicate or work with the Florida Highway Patrol to ensure proper identification of the bodies and failed to provide the Florida Highway Patrol with fingerprint cards that may have confirmed the victims' identities.

49.     Defendant Minyard failed to use Deleigha Gibson's cross tattoo or belly button piercing to properly identify her body and the absence of such markings to identify Samara Cooks' body.

50.     Although Plaintiff Ranada Cooks asked to view her daughter's body, Defendant Minyard prevented Samara's mother from identifying Samara's body in person or by photograph. In fact, Defendant Minyard did not even attempt to reach out to Samara's mother to verify unique markings and piercings on Deleigha's body—markings that would have ensured proper identification of both Deleigha's and Samara's bodies.

51.     Upon information and belief, Defendant Minyard had inadequate procedures in place for properly identifying bodies and/or did not follow adequate policies to ensure proper identification and verification.

52.     Plaintiff Ranada Cooks signed the Consent for Body Release, allowing the District One Medical Examiner to release the body of Samara Cooks to Faith Chapel Funeral Home.

53.     Defendant Minyard, without consent, released the body of Samara Cooks to Tracy Morton Memorial Chapel.

54.     Defendant Minyard prevented Plaintiff from laying her daughter to rest according to her wishes by misidentifying the bodies of Deleigha Gibson and Samara Cooks, incorrectly notating their Death Certificates, giving

incorrect information to the families of the deceased girls, releasing the wrong bodies to the funeral home chosen by each family (ensuring they would be embalmed by an unauthorized funeral home), all despite possessing picture identification for Deleigha Gibson and despite the disparate age, height, weight, and appearance of the two victims of the crash on July 29, 2019, and demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiff's constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

55.     Defendant Minyard failed in on or more of the following ways:

a.     failed to accurately identify the body of Samara Cooks as such;

b.     failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that she learned that her office did not have the body of "Jane Smith" but rather the body of Samara Cooks, and despite the DAVID report including a photo of Deleigha Gibson,

who looked nothing like Samara Cooks, who was tagged as Deleigha;

c.   enacted policies which prevented the Plaintiff from viewing the body of Samara Cooks, an action that, had it been allowed, would have ensured accurate identification of Samara Cooks' body;

d.   failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing—to properly identify her body or verify her identity; which in turn would allow proper identification of Samara Cooks' body in the absence of such body markings;

e.   failed to properly tag or label or identify the body of Samara Cooks;

f.   released the body of Samara Cooks to Tracy Morton Memorial Chapel without authorization;

g.   proceeded or allowed Defendant Gallagher to proceed with autopsies on the wrong bodies;

h.   failed to take precautions to ensure proper identification of the body of Samara Cooks, treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiff's constitutionally protected rights in the body of her deceased daughter;

i.    failed to comply with their mission statement to "[t]reat bereaved families with respect, sensitivity and consideration" or to "[p]rovide families and loved ones of decedents with timely reports and explanations";

j.    failed to establish and/or implement policies and procedures to ensure proper identification of the deceased;

k.    failed to establish and/or implement policies and procedures to ensure protection of surviving family members' rights with regard to the bodies of their deceased family member;

l.    failed to communicate with any member of the Florida Highway Patrol to ensure proper identification;

m.    failed to provide Florida Highway Patrol with the fingerprint cards of the deceased so that the fingerprints could be forwarded to the appropriate agency for identification purposes;

n.    failed to accurately document Samara Cooks' autopsy report and/or Death Certificate; and,

o.  failed to establish and/or implement quality control measures.

56.    As a direct and proximate result of the actions or failures to act on the part of Defendant Minyard, Plaintiff was prevented from access to the body of her daughter for burial in the manner she desired or embalmment by the

professional chosen causing Plaintiff to experience unimaginable emotional pain and suffering, mental anguish, discomfort, deterioration, loss of the ability to enjoy life, and has suffered other reasonably foreseeable compensatory damages.

57.     Plaintiff has retained the undersigned as counsel in pursuit of the protection of her constitutional rights.

WHEREFORE, Plaintiff prays for the entry of judgment against Defendant Minyard, jointly and severally with other Defendants to this action,  for compensatory damages (past and future) in an amount as proved at trial; for an award of punitive damages; for costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## SECOND CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Timothy Gallagher

58.     Plaintiff re-alleges and incorporate by reference each previously stated paragraph 1-41 as if fully set forth herein.

59.     Defendant Gallagher, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition

in violation of Plaintiff's constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

60.      Defendant Gallagher participated in the identification, tagging, autopsy, marking, handling, release, and movement of the body of Samara Cooks.

61.      Defendant Gallagher was on notice that Deleigha Gibson and Samara Cooks' bodies were potentially improperly identified because the body removal service notated that the bodies were only "believed to be", abbreviated "BTB," Deleigha Gibson and "Jane Smith." While both bodies were in the possession of Defendant Gallagher, a caller notified the medical examiner's office that the identification of one of the decedents as "Jane Smith" was incorrect as a "Jane Smith" was not involved in the collision at all. In fact, this third party caller was the person who notified Defendant Gallagher that they had Samara Cooks' body in their possession. Upon information and belief, Defendant Gallagher did nothing to verify the identities of the bodies, merely crossing out the name "Jane Smith" and changing it to "Samara Cooks."

62.      Defendant Gallagher was on notice that Deleigha Gibson and Samara Cooks' bodies were improperly identified because they had a photograph of Deleigha that clearly did not resemble the body identified as Deleigha (the body

of Samara Cooks) and they had a photograph of "Jane Smith" who clearly did not resemble the body identified as "Jane Smith" (the body of Deleigha Gibson).

63.     Despite notice that the identities were incorrect, Defendant Gallagher proceeded with autopsies and preparation of the misidentified bodies, ultimately sending them to the wrong funeral homes.

64.     Defendant Gallagher failed to communicate or work with the Florida Highway Patrol to ensure proper identification of the bodies and failed to provide the Florida Highway Patrol with fingerprint cards that may have confirmed the victims' identities.

65.     Defendant Gallagher failed to use Deleigha Gibson's cross tattoo or belly button piercing to properly identify her body and the absence of said body markings to properly identify Samara Cooks' body.

66.     Although Plaintiff Ranada Cooks asked to view her daughter's body, Defendant Gallagher prevented Samara's mother from identifying Samara's body in person or by photograph.

67.     Plaintiff Ranada Cooks signed the Consent for Body Release, allowing the District One Medical Examiner to release the body of Samara Cooks to Faith Chapel Funeral Home.

68.     Defendant Gallagher, without consent, released the body of Samara Cooks to Tracy Morton Memorial Chapel.

69.      Defendant Gallagher prevented Plaintiff from laying her daughter to rest according to her wishes by misidentifying the bodies of Deleigha Gibson and Samara Cooks, incorrectly notating their Death Certificates, giving incorrect information to the families of the deceased girls, releasing the wrong bodies to the funeral home chosen by each family, all despite possessing picture identification for Deleigha Gibson and despite the disparate age, height, weight, and appearance of the two victims of the crash on July 29, 2019, and demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiff's constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

70.      Defendant Gallagher failed in one or more of the following ways:

a.  failed to accurately identify the body of Samara Cooks as such;

b.  failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that he learned that his office did not have the body of "Jane Smith"

22

but rather the body of Samara Cooks, and despite the DAVID report including a photo of Deleigha Gibson, who looked nothing like Samara Cooks, who was tagged as Deleigha;

c.  failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing—to properly identify her body or verify her identity with Plaintiffs; and to, in turn, properly identify and/or verify identity of Samara Cooks.

d.  failed to ensure proper preservation of the body of Samara Cooks

e.  failed to properly tag or label or identify the body of Samara Cooks;

f.  released the body of Samara Cooks to Tracy Morton Memorial Chapel without authorization;

g.  proceeded with autopsies on the wrong bodies;

h.  failed to take precautions to ensure proper identification of the body of Samara Cooks, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter;

i.  failed to comply with the mission statement to "[t]reat bereaved families with respect, sensitivity and consideration" or to "[p]rovide

families and loved ones of decedents with timely reports and

explanations";

j.  failed to follow policies and procedures that would ensure proper

identification of the deceased;

k.  failed to follow policies and procedures that would ensure protection

of surviving family members' rights with regard to the bodies of

their deceased family member;

l.  failed to communicate with any member of the Florida Highway

Patrol to ensure proper identification;

m. failed to provide Florida Highway Patrol with the fingerprint cards of

the deceased so that the fingerprints could be forwarded to the

appropriate agency for identification purposes;

n.  failed to accurately document Samara Cooks' autopsy report and/or

Death Certificate; and,

o.  failed to follow quality control measures.

71.      As a direct and proximate result of the actions or failures to act

on the part of Defendant Gallagher, Plaintiff was prevented from access to the

body of her daughter for burial in the manner she desired or embalmment by the

professional chosen, causing Plaintiff to experience unimaginable emotional pain

and suffering, mental anguish, discomfort, deterioration, loss of the ability to enjoy life, and have suffered other reasonably foreseeable compensatory damages.

72.     Plaintiff had retained the undersigned as counsel in pursuit of the protection of their constitutional rights.

WHEREFORE, Plaintiff prays for the entry of judgment against Defendant Gallagher, jointly and severally with other Defendants to this action, for compensatory damages (past and future) in an amount as proved at trial; for an award of punitive damages; for costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## THIRD CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Gulf Coast Autopsy Physicians, P.A.

73.     Plaintiff re-alleges and incorporates by reference each previously stated paragraph 1-41 as if fully set forth herein.

74.     Defendant Gulf Coast Autopsy, while acting under color of State law and by virtue of the authority vested in it by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiff's constitutional rights as secured by the

Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

75.     Defendant Gulf Coast Autopsy participated in the identification, tagging, autopsy, marking, handling, release, and movement of the body of Samara Cooks.

76.     Defendant Gulf Coast Autopsy was on notice that Deleigha Gibson and Samara Cooks' bodies were potentially improperly identified because the body removal service notated that the bodies were only "believed to be", abbreviated "BTB," Deleigha Gibson and "Jane Smith." While both bodies were in the possession of Defendant Gulf Coast Autopsy, a caller notified the medical examiner's office that the identification of one of the decedents as "Jane Smith" was incorrect as a "Jane Smith" was not involved in the collision at all. In fact, this third party caller was the person who notified Defendant Gulf Coast Autopsy that they had Samara Cooks' body in their possession. Upon information and belief, Defendant Gulf Coast Autopsy did nothing to verify the identities of the bodies, merely crossing out the name "Jane Smith" and changing it to "Samara Cooks."

77.     Defendant Gulf Coast Autopsy was on notice that Deleigha Gibson and Samara Cooks' bodies were improperly identified because they had a photograph of Deleigha that clearly did not resemble the body identified as Deleigha (the body of Samara Cooks) and they had a photograph of "Jane Smith"

who clearly did not resemble the body identified as "Jane Smith" (the body of Deleigha Gibson).

78.     Despite notice that the identities were incorrect, Defendant Gulf Coast Autopsy proceeded with autopsies and preparation of the misidentified bodies, ultimately sending them to the wrong funeral homes.

79.     Defendant Gulf Coast Autopsy failed to communicate or work with the Florida Highway Patrol to ensure proper identification of the bodies and failed to provide the Florida Highway Patrol with fingerprint cards that may have confirmed the victims' identities.

80.     Defendant Gulf Coast Autopsy failed to use Deleigha Gibson's cross tattoo or belly button piercing to properly identify her body and the absence of said body markings to identify Samara Cooks' body.

81.     Defendant Gulf Coast Autopsy prevented Samara Cooks' mother from identifying Samara's body in person or by photograph. In fact, no representative of Defendant Gulf Coast Autopsy even attempted to reach out to Samara's mother to verify unique markings and piercings on Deleigha's body—markings that would have ensured proper identification of Deleigha and the proper identification of Samara Cooks as well.

82.     Upon information and belief, Defendant Gulf Coast Autopsy had inadequate procedures in place for properly identifying bodies and/or did not follow adequate policies to ensure proper identification and verification.

83.     Plaintiff Ranada Cooks signed the Consent for Body Release, allowing the District One Medical Examiner to release the body of Samara Cooks to Faith Chapel.

84.     Defendant Gulf Coast Autopsy, without consent, released the body of Samara Cooks to Tracy Morton Memorial Chapel.

85.     Defendant Gulf Coast Autopsy prevented Plaintiff from laying her daughter to rest according to her wishes by misidentifying the bodies of Deleigha Gibson and Samara Cooks, incorrectly noting their Death Certificates, giving incorrect information to the families of the deceased girls, releasing the wrong bodies to the funeral home chosen by each family, all despite possessing picture identification for Deleigha Gibson and despite the disparate age, height, weight, and appearance of the two victims of the crash on July 29, 2019, and demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiff's constitutional rights as secured by the Fourteenth

Amendment to the United States Constitution and Article 1, §2 & 9 of the
Constitution of the State of Florida.

86.     Defendant Gulf Coast Autopsy failed in one or more of the
following ways:

a.  Employees and/or agents failed to accurately identify the body of
    Samara Cooks as such;

b.  employees and/or agents failed to conduct any investigation into the
    identities of the two young women despite notation by body
    removal that the bodies were only "believed to be" Deleigha
    Gibson and "Jane Smith," despite the fact that she learned that her
    office did not have the body of "Jane Smith" but rather the body of
    Samara Cooks, and despite the DAVID report including a photo of
    Deleigha Gibson, who looked nothing like Samara Cooks, who was
    tagged as Deleigha;

c.  enacted and implemented policies which prevented the Plaintiff from
    viewing the body of Samara Cooks, an action that, had it been
    allowed, would have ensured accurate identification of Samara
    Cooks' body;

d.  employees and/or agents failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing—to properly identify her body or verify her identity with Plaintiff;

e.  employees and/or agents failed to properly tag or label or identify the body of Samara Cooks;

f.  employees and/or agents released the body of Samara Cooks to Tracy Morton Memorial Chapel without authorization;

g.  employees and/or agents failed to take precautions to ensure proper identification of the body of Samara Cooks, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter;

h.  failed to comply with their mission statement to "[t]reat bereaved families with respect, sensitivity and consideration" or to "[p]rovide families and loved ones of decedents with timely reports and explanations";

i.  failed to establish and/or implement policies and procedures to ensure proper identification of the deceased;

j.  failed to establish and/or implement policies and procedures to ensure protection of surviving family members' rights with regard to the bodies of their deceased family member;

k.  failed to liaise with any member of the Florida Highway Patrol to ensure proper identification; and,

l.  failed to establish and/or implement quality control measures.

87.     As a direct and proximate result of the actions or failures to act on the part of Defendant Gulf Coast Autopsy, Plaintiff was prevented from access to the body of her daughter for burial in the manner they desired or embalmment by the professional chosen causing Plaintiff to experience unimaginable emotional pain and suffering, mental anguish, discomfort, deterioration, loss of the ability to enjoy life, and has suffered other reasonably foreseeable compensatory damages.

88.     Plaintiff has retained the undersigned as counsel in pursuit of the protection of their constitutional rights.

WHEREFORE, Plaintiff prays for the entry of judgment against Defendant Gulf Coast Autopsy, jointly and severally with the other named Defendants, for compensatory damages (past and future) in an amount as proved at trial; for an award of punitive damages; for costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## FOURTH CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Chad Lynch

89.     Plaintiff re-alleges and incorporates by reference each previously stated paragraph 1-41 as if fully set forth herein.

90.     Defendant Lynch, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

91.     Defendant Lynch participated in the identification, tagging or otherwise marking, handling, and movement of the body of Samara Cooks.

92.     Upon information and belief, Defendant Lynch misidentified the body of Samara Cooks as Deleigha Gibson by handing the body removal service the DAVID report of Deleigha Gibson when they removed the body of Samara Cooks from the scene of the crash. Upon information and belief, Defendant Lynch misidentified the body of Deleigha Gibson as "Jane Smith" by handing the body removal service the DAVID report of "Jane Smith" when they

removed her body from the scene of the crash. Defendant Lynch misidentified the two bodies despite possessing picture identification for Deleigha Gibson and despite the disparate age, height, weight, and appearance of the two victims of the crash on July 29, 2019.

93.     The actions by Defendant Lynch, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, to misidentify the bodies and fail to conduct any follow-up investigation despite questions as to the identities of the two crash victims, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiffs' constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

94.     Defendant Lynch failed in one or more of the following ways:

a.  failed to accurately identify the body of Samara Cooks as such;

b.  failed to document or consider Deleigha's cross tattoo on her wrist or belly button piercing to properly identify her body;

c.  failed to ascertain a correct body position for Samara Cooks for the Florida Traffic Crash Report;

d. failed to properly tag or label or identify the body of Samara Cooks before her transfer to the custody and/or control of Defendant Minyard, Defendant Gallagher, and Defendant Gulf Coast Autopsy;

e. provided the sensitive DAVID report of Deleigha Gibson to the body removal service as identification for Samara Cooks;

f. provided the sensitive DAVID report of "Jane Smith," an individual not involved at all in the crash, to the body removal service as identification for Deleigha Gibson;

g. failed to take precautions to ensure proper identification of the body of Samara Cooks, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiff's constitutionally protected rights in the body of her deceased daughter.

95.      As a direct and proximate result of the actions or failures to act on the part of Defendant Lynch, Plaintiff was prevented from access to the body of her daughter for burial in the manner she desired or embalmment by the professional chosen causing Plaintiff to experience unimaginable emotional pain and suffering, mental anguish, discomfort, deterioration, loss of the ability to enjoy life, and has suffered other reasonably foreseeable compensatory damages.

96.      Plaintiff has retained the undersigned as counsel in pursuit of the protection of their constitutional rights.

34

WHEREFORE, Plaintiff prays for the entry of judgment against Defendant Lynch, jointly and severally with the other named Defendants, for compensatory damages (past and future) in an amount as proved at trial; for an award of punitive damages; for costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## FIFTH CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Thomas Paschal

97.     Plaintiff re-alleges and incorporates by reference each previously stated paragraph 1-41 as if fully set forth herein.

98.     Defendant Paschal, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiff's constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

99.     Defendant Paschal participated in the identification, tagging or otherwise marking, handling, and movement of the body of Samara Cooks.

100.     Upon information and belief, Defendant Paschal, despite possessing a picture identification of Deleigha Gibson at the scene of the crash, despite the fact that Deleigha Gibson was recognizable as herself at the scene of the crash, and despite his duty as lead Traffic Homicide Investigator to work with the medical examiner's office to ensure proper identification, as described in the Florida Highway Patrol Traffic Homicide Investigations Policy Manual, failed to identify the bodies or follow-up to ensure proper identification of the bodies of Deleigha Gibson and Samara Cooks.

101.     Upon information and belief, Defendant Paschal misidentified the final resting locations of the bodies of Deleigha Gibson and Samara Cooks and incorrectly notated and/or approved the Florida Traffic Crash Report with body locations and positions in the vehicle, gave incorrect information to the families of the deceased girls, and to date has yet to correct the Florida Traffic Crash Report to convey the correct final resting locations and identities of the bodies of Deleigha Gibson and Samara Cooks.

102.     Upon information and belief, Defendant Paschal failed to take identification fingerprints of Deleigha Gibson or Samara Cooks, failed to ensure or even inquire as to whether the medical examiner's office took identification fingerprints, and failed to forward fingerprint cards to the appropriate federal agency, as required by the Florida Highway Patrol Traffic Homicide Investigations

36

Policy Manual. In fact, Defendant Paschal failed to take any action to properly identify the bodies of Deleigha Gibson and Samara Cooks and/or failed to forward any helpful information to the District One Medical Examiner's Office.

      103.     The actions by Defendant Paschal, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, to misidentify the bodies, fail to conduct any investigation into the identities beyond actions at the crash scene, fail to communicate with the office of the medical examiner, fail to accurately identify the victims in the crash report and traffic homicide investigation report, and fail to obtain fingerprints or ensure that fingerprints were obtained and sent to the appropriate agency, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiff's constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

104.     Defendant Paschal failed in one or more of the following ways:

a.  failed to accurately identify the body of Samara Cooks as such;

b.  failed to document or consider Deleigha's cross tattoo on her wrist or belly button piercing to properly identify her body; and thus also identify the body of Samara with the absence of these body markings.

c.  failed to ascertain a correct body position for Samara Cooks for the Florida Traffic Crash Report or Traffic Homicide Investigation Report;

d.  failed to properly tag or label or identify the body of Samara Cooks before her transfer to the custody and/or control of Defendant Minyard, Defendant Gallagher, and Defendant Gulf Coast Autopsy;

e.  failed to follow or implement policies and procedures to adequately prevent confusion of bodies and ensure protection of surviving family members' rights to the bodies of their deceased family member;

f.  failed to notify the family of Samara Cooks of accurate facts concerning her involvement in the crash on July 29, 2019, including her position in the vehicle before the crash, her body position after the crash, and the probable cause of death;

g.  failed to accurately document the Florida Traffic Crash Report and the Traffic Homicide Investigation Report;

h. failed to implement and/or enforce quality control measures;

i. failed to take identification fingerprints of Deleigha Gibson or Samara Cooks;

j. failed to ensure or even inquire as to whether the medical examiner's office took identification fingerprints;

k. failed to forward fingerprint cards to the appropriate federal agency, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual;

l. failed to take any action to properly identify the bodies of Deleigha Gibson and Samara Cooks after he left the crash site and failed to communicate at all with the District One Medical Examiner's Office, Defendant Minyard, Defendant Gallagher, or Defendant Gulf Coast Autopsy;

m. attempted to interfere with the body of Samara Cooks by arriving at Tracy Morton Funeral Home in order to switch the bodies of Deleigha Gibson and Samara Cooks in an attempt to hide the confusion of the bodies from Plaintiff;

n. failed to take precautions to ensure proper identification of the body of Samara Cooks, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs

constitutionally protected rights in the body of their deceased

daughter.

105.     As a direct and proximate result of the actions or failures to act

on the part of Defendant Paschal, Plaintiff was prevented from access to the body

of her daughter for burial in the manner she desired or embalmment by the

professional chosen causing Plaintiff to experience unimaginable emotional pain

and suffering, mental anguish, discomfort, deterioration, loss of the ability to enjoy

life, and has suffered other reasonably foreseeable compensatory damages.

106.     Plaintiff has retained the undersigned as counsel in pursuit of

the protection of her constitutional rights.

WHEREFORE, Plaintiff prays for the entry of judgment against Defendant

Paschal, jointly and severally with the other named Defendants, for compensatory

damages (past and future) in an amount as proved at trial; for an award of punitive

damages; for costs, expenses, and attorney's fees for this action in accordance with

42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the

court deems just and proper.

## SIXTH CAUSE OF ACTION

### 42 U.S.C. § 1983 Action against Defendant Randle Padgett

107.     Plaintiff re-alleges and incorporates by reference each

previously stated paragraph 1-41 as if fully set forth herein.

108. Defendant Padgett, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiff's constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

109. Defendant Padgett participated in the identification, and handling of the body of Samara Cooks as well as the enactment or enforcement of the policies and procedures related to the identification, tagging, marking, handling, or other movement of the body of Samara Cooks.

110. Upon information and belief, Defendant Padgett misidentified the final resting locations of the bodies of Deleigha Gibson and Samara Cooks and incorrectly notated and/or approved the Florida Traffic Crash Report with body locations and positions in the vehicle, gave incorrect information to the families of the deceased girls, and to date has yet to correct the Florida Traffic Crash Report to convey the correct final resting locations and identities of the bodies of Deleigha Gibson and Samara Cooks.

111.     Upon information and belief, Defendant Padgett failed to establish and maintain a liaison with the District One Medical Examiner's Office to ensure proper communication and, in this particular case, to accurately identify the bodies of Deleigha Gibson and Samara Cooks, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual.

112.     Upon information and belief, Defendant Padgett had inadequate procedures in place for properly identifying bodies and/or did not enforce policies to ensure proper identification and verification.

113.      The actions by Defendant Padgett, while acting under color of State law and by virtue of the authority vested in him by the State of Florida, and its agencies, to misidentify the bodies, fail to conduct any investigation into the identities, fail to communicate with the office of the medical examiner, fail to accurately identify the victims in the crash report and traffic homicide investigation report, and fail to obtain fingerprints or ensure that fingerprints were obtained and sent to the appropriate agency, demonstrated deliberate, willful, and/or wanton indifference to the property right, quasi-property right, or legitimate claim of entitlement of Plaintiff's to access the body of her deceased daughter, Samara Cooks, for purposes of lawful disposition in violation of Plaintiff's constitutional rights as secured by the Fourteenth Amendment to the United States Constitution and Article 1, §2 & 9 of the Constitution of the State of Florida.

114.     Defendant Padgett failed in one or more of the following ways:

a.  In his supervisory role, failed to ensure a correct body position for Samara Cooks for the Florida Traffic Crash Report or the Traffic Homicide Investigation Report but approved them as accurate;

b.  failed to establish, implement, or enforce policies and procedures to adequately prevent confusion of bodies and ensure protection of surviving family members' rights to the bodies of their deceased family member;

c.  failed to establish, implement, and/or enforce quality control measures;

d.  failed to establish and maintain a liaison with the District One Medical Examiner's Office to ensure proper communication and, in this particular case, to accurately identify the bodies of Deleigha Gibson and Samara Cooks, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual;

e.  failed to take precautions to ensure proper identification of the body of Samara Cooks, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiffs constitutionally protected rights in the body of their deceased daughter.

115.     As a direct and proximate result of the actions or failures to act on the part of Defendant Padgett, Plaintiff was prevented from access to the body of her daughter for burial in the manner she desired or embalmment by the professional chosen causing Plaintiff to experience unimaginable emotional pain and suffering, mental anguish, discomfort, deterioration, loss of the ability to enjoy life, and has suffered other reasonably foreseeable compensatory damages.

116.     Plaintiff has retained the undersigned as counsel in pursuit of the protection of her constitutional rights.

WHEREFORE, Plaintiff prays for the entry of judgment against Defendant Padgett, jointly and severally with the other named Defendants, for compensatory damages (past and future) in an amount as proved at trial; for an award of punitive damages; for costs, expenses, and attorney's fees for this action in accordance with 42 U.S.C. §1988; for a trial by jury; and for such other and further relief as the court deems just and proper.

## SEVENTH CAUSE OF ACTION

### Wanton and Willful Mishandling of Corpse by Defendant Faith Chapel Funeral Services, LLC

117.     Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

118.     Defendant Faith Chapel undertook and was under a duty to perform embalming, visitation, and funeral services for Samara Cooks with dignity and respect and was under a duty not to desecrate the body of Samara Cooks. Furthermore, Defendant Faith Chapel's duties include, but are not limited to, the following:

a.  A duty to protect and preserve Samara Cooks' body in a dignified, respectful, and sacred manner and the manner intended by her next of kin;

b.  A duty to properly identify the body of the deceased, Samara Cooks;

c.  A duty to properly preserve the body of the deceased in line with the deceased and next of kin's wishes;

d.  A duty to embalm only the body for which it has authorization;

e.  A duty to treat surviving family members of the deceased with honesty, dignity, and respect;

f.  A duty to act to minimize disruption of the body during the preparation and embalming process; and

g.  A duty to protect the next of kin's right to bury their loved one's body in an unmutilated condition.

119.    Defendant Faith Chapel was careless, reckless, willful, and/or wanton in the embalming, preparation, visitation, and funeral services for Samara Cooks.  Defendant Faith Chapel's carelessness, recklessness, willfulness, and/or wantonness includes, but is not limited to, the following particulars:

a. Failing to enact policies and procedures to accurately identify whether it had the correct body of Samara Cooks in its possession and/or failed to comply with adequate policies and procedures;

b. Failing to adequately identify the body of Samara Cooks;

c. Failing to discover that it had the incorrect body in its possession despite obvious evidence;

d. Failing to embalm the appropriate body for which it had authorization;

e. Failing to adequately preserve and prepare the body of Samara Cooks after it obtained control of her body;

f. Failing to protect and preserve Samara Cooks' body in a dignified, respectful, and sacred manner and the manner intended by her next of kin;

g. Failing to treat Plaintiff with honesty, dignity, and respect, but rather attempting to hide its mistakes from the Plaintiff;

h.   Failing to allow Plaintiff Ranada Cooks to view the body of her
     deceased daughter (upon viewing she discovered that Defendant Faith
     Chapel had the incorrect body);

i.   Failing to minimize disruption of the body during the preparation
     and/or embalming process;

j.   Failing to acknowledge or respect the Plaintiff while she was in the
     waiting room when Defendant Faith Chapel had finally discovered
     that it had the incorrect body;

k.   Wantonly disregarding funeral home regulations and accepted
     industry standards when identifying and preparing Samara Cooks'
     body; and,

l.   Otherwise committing wanton and/or reckless acts that proximately
     caused Plaintiff to suffer damage.

120.     These reckless, wanton, willful, and/or outrageous actions by
Defendant Faith Chapel have directly and proximately caused actual, direct,
incidental, consequential, and special damages to Plaintiff including, but not
limited to, nightmares and visions of her daughter's mutilated remains, loss of
appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental
anguish.

## EIGHTH CAUSE OF ACTION

## Wanton and Willful Mishandling of Corpse by Defendant Tracy Morton Memorial Chapel, LLC

121.    Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

122.    Defendant Tracy Morton undertook and was under a duty to perform embalming services only with express authorization from next of kin. *See* Fla. Stat. § 497.152(7)(d). Furthermore, Defendant Tracy Morton's duties include, but are not limited to, the following:

a.  A duty to perform embalming services only with express authorization, Fla. Stat. § 497.152(7)(d);

b.  A duty to protect and preserve all bodies in a dignified, respectful, and sacred manner and the manner intended by the next of kin, Fla. Stat. § 497.386(4);

c.  A duty to properly identify the body of the deceased for which they have authorization;

d.  A duty to treat surviving family members of the deceased with honesty, dignity, and respect;

e.  A duty to act to minimize disruption of the body during the embalmment or preparation process; and

f.  A duty to protect the next of kin's right to bury their loved one's body in an unmutilated condition.

123.     Defendant Tracy Morton was careless, reckless, willful, and/or wanton in the embalming and interference with the body of Samara Cooks. Defendant Tracy Morton's carelessness, recklessness, willfulness, and/or wantonness includes, but is not limited to, the following particulars:

a.  Failing to put in place policies and procedures to adequately identify whether it had the correct body of Deleigha Gibson in its possession and/or failed to comply with adequate policies and procedures;

b.  Failing to adequately identify the body of Deleigha Gibson;

c.  Failing to discover that it had the incorrect body in its possession despite obvious evidence;

d.  Embalmed the body of Samara Cooks without authorization;

e.  Failing to adequately preserve the body of Samara Cooks when it was in its possession;

f.  Failing to protect and preserve Samara Cooks' body in a dignified, respectful, and sacred manner and the manner intended by her next of kin;

g.  Failing to treat Plaintiff with honesty, dignity, and respect, but rather failing to notify Plaintiff that it had the body of her daughter;

h. Failing to minimize disruption of the body during the preparation and/or embalmment process to the extent that Samara's body oozed embalming fluids and required a plastic suit to contain the fluids during the visitation and burial process, causing plaintiff extreme mental anguish, stress, and anxiety.

i. Wantonly disregarding funeral home regulations and accepted industry standards when identifying and preparing the body in its possession, that of Samara Cooks;

j. Otherwise committing wanton and/or reckless acts that proximately caused Plaintiff to suffer damage.

124.     These reckless, wanton, willful, and/or outrageous actions by Defendant Tracy Morton have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiff including, but not limited to, nightmares and visions of her daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## NINTH CAUSE OF ACTION

### Tort of Outrage by Defendant Faith Chapel Funeral Services, LLC

125.     Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

126.     Defendant Faith Chapel either intended to inflict emotional distress on Plaintiff by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Faith Chapel was extreme and outrageous:

a.  Failing to enact policies and procedures to accurately identify whether it had the correct body of Samara Cooks in its possession and/or failed to comply with adequate policies and procedures;

b.  Failing to adequately identify the body of Samara Cooks;

c.  Failing to discover that it had the incorrect body in its possession despite obvious evidence, including but not limited to, acknowledging the vast difference in body size from Samara Cooks' typical clothing size, possessing photographs that looked nothing like the body in Defendant's possession, and failing to document unique markings or piercings;

d.  Failing to embalm the appropriate body for which it had authorization;

e.  Failing to adequately preserve and prepare the body of Samara Cooks after it obtained control of her body;

f.  Failing to protect and preserve Samara Cooks' body in a dignified, respectful, and sacred manner and the manner intended by her next of kin;

g. Failing to treat Plaintiff with honesty, dignity, and respect, but rather attempting to hide its mistakes from the Plaintiff;

h. Failing to minimize disruption of the body during the preparation and/or embalming process;

i. Wantonly disregarding funeral home regulations and accepted industry standards when identifying and preparing Samara Cooks' body; and,

j. Otherwise committing wanton and/or reckless acts that were likely to and did proximately cause Plaintiff to suffer damage.

127.   After Defendant Faith Chapel committed the acts delineated in the preceding paragraph and as a direct and proximate result of its conduct, Plaintiff suffered severe emotional distress such that no reasonable person could be expected to endure.

128.   These outrageous actions by Defendant Faith Chapel have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiff including, but not limited to, nightmares and visions of her daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## TENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Tracy Morton Memorial Chapel, LLC

129.    Plaintiff realleged and incorporated by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

130.    Defendant Tracy Morton either intended to inflict emotional distress on Plaintiff by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Tracy Morton was extreme and outrageous:

a.  Failing to put in place policies and procedures to adequately identify whether it had the correct body of Deleigha Gibson in its possession and/or failed to comply with adequate policies and procedures;

b.  Failing to adequately identify the body of Samara Cooks;

c.  Failing to discover that it had the incorrect body in its possession despite obvious evidence, including but not limited to, acknowledging the vast difference in body size of Deleigha Gibson's body as compared to the clothes provided by Samara's family, possessing photographs that looked nothing like the body in Defendant's possession, and failing to document unique markings or piercings;

d.  Failing to adequately preserve the body of Samara Cooks when her body was in its possession; to the extent that Samara's body oozed

embalming fluids and required a plastic suit to contain the fluids during the visitation and burial process, causing plaintiff extreme mental anguish, stress, and anxiety.

e. Embalming the body of Samara Cooks without authorization;

f. Failing to protect and preserve Samara Cooks' body in a dignified, respectful, and sacred manner and the manner intended by her next of kin;

g. Failing to treat Plaintiff with honesty, dignity, and respect, but rather failing to notify Plaintiff that it had the body of her daughter;

h. Failing to minimize disruption of the body during the preparation and/or embalmment process;

i. Wantonly disregarding funeral home regulations and accepted industry standards when identifying and preparing the body in its possession, that of Samara Cooks;

j. Otherwise committing wanton and/or reckless acts that proximately caused Plaintiff to suffer damage.

131.    After Defendant Tracy Morton committed the acts delineated in the preceding paragraph and as a direct and proximate result of its conduct, Plaintiff suffered severe emotional distress such that no reasonable person could be expected to endure.

132.     These outrageous actions by Defendant Tracy Morton have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiff including, but not limited to, nightmares and visions of her daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

## ELEVENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Chad Lynch

133.     Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

134.     Defendant Chad Lynch either intended to inflict emotional distress on Plaintiff by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Chad Lynch was extreme and outrageous:

    a.  failed to accurately identify the body of Samara Cooks as such, despite clear photographic evidence;

    b.  failed to document or consider Deleigha's cross tattoo on her wrist or belly button piercing to properly identify her body and that of Samara Cooks;

    c.  failed to ascertain a correct body position for Samara Cooks for the Florida Traffic Crash Report, knowing that her family would think she

remained in the vehicle rather than being ejected based on the crash report;

d.  failed to ensure proper preservation of the body of Samara Cooks;

e.  failed to properly tag or label or identify the body of Samara Cooks before her transfer to the custody and/or control of Defendant Minyard, Defendant Gallagher, and Defendant Gulf Coast Autopsy;

f.  provided the sensitive DAVID report of Deleigha Gibson to the body removal service as identification for Samara Cooks;

g.  provided the sensitive DAVID report of "Jane Smith," an individual not involved at all in the crash, to the body removal service as identification for Deleigha Gibson;

h.  upon information and belief, rushed through the identification of the bodies and communication with the body removal service;

i.  failed to take precautions to ensure proper identification of the body of Samara Cooks, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiff's constitutionally protected rights in the body of her deceased daughter.

135.     After Defendant Chad Lynch committed the acts delineated in the preceding paragraph and as a direct and proximate result of his conduct, Plaintiff suffered severe emotional distress such that no reasonable person could be expected to endure it.

136.     These outrageous actions by Defendant Chad Lynch have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiff including, but not limited to, nightmares and visions of her daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

137.     In the abundance of caution, Plaintiff has  complied with all conditions precedent to filing this action.  Specifically, Notices of Claim were served pursuant to Fla.Stat. Section 768.28(6)(a)(2019).

## **TWELFTH CAUSE OF ACTION**

### **Tort of Outrage by Defendant Thomas Paschal**

138.     Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

139.     Defendant Thomas Paschal either intended to inflict emotional distress on Plaintiff by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Paschal was extreme and outrageous:

a. failed to accurately identify the body of Samara Cooks as such, despite clear photographic evidence;

b. failed to document or consider Deleigha's cross tattoo on her wrist or belly button piercing to properly identify her body;

c. failed to ascertain a correct body position for Samara Cooks for the Florida Traffic Crash Report or Traffic Homicide Investigation Report, knowing that her family would think she remained in the vehicle and not ejected based on the crash report;

d. failed to properly tag or label or identify the body of Samara Cooks before her transfer to the custody and/or control of Defendant Minyard, Defendant Gallagher, and Defendant Gulf Coast Autopsy;

e. failed to follow or implement policies and procedures to adequately prevent confusion of bodies and ensure protection of surviving family members' rights to the bodies of their deceased family member;

f. failed to notify the family of Samara Cooks of accurate facts concerning her involvement in the crash on July 29, 2019, including her position in the vehicle before the crash, her body position after the crash, and the probable cause of death;

g. failed to accurately document the Florida Traffic Crash Report and the Traffic Homicide Investigation Report, even to the present;

h.  failed to take identification fingerprints of Deleigha Gibson or Samara Cooks;

i.  failed to ensure or even inquire as to whether the medical examiner's office took identification fingerprints;

j.  failed to forward fingerprint cards to the appropriate federal agency, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual;

k.  failed to take any action to properly identify the bodies of Deleigha Gibson and Samara Cooks after he left the crash site and failed to communicate at all with the District One Medical Examiner's Office, Defendant Minyard, Defendant Gallagher, or Defendant Gulf Coast Autopsy;

l.  attempted to interfere with the body of Samara Cooks by arriving at Tracy Morton Funeral Home in order to switch the bodies of Deleigha Gibson and Samara Cooks in an attempt to hide the confusion of the bodies from Plaintiff;

m. failed to take precautions to ensure proper identification of the body of Samara Cooks, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiff's constitutionally protected rights in the body of her deceased daughter.

140.     After Defendant Paschal committed the acts delineated in the preceding paragraph and as a direct and proximate result of his conduct, Plaintiff suffered severe emotional distress such that no reasonable person could be expected to endure it.

141.     These outrageous actions by Defendant Paschal have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiff including, but not limited to, nightmares and visions of her daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

142.     In the abundance of caution, Plaintiff has complied with all conditions precedent to filing this action.   Specifically, Notices of Claim were served pursuant to Fla.Stat. Section 768.28(6)(a)(2019).

## THIRTEENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Randle Padgett

143.     Plaintiff realleges and incorporates by reference paragraphs 1, 2 and 41 above as if specifically set out herein.

144.  Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

145.   Defendant Randle Padgett either intended to inflict emotional distress on Plaintiff by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Padgett was extreme and outrageous:

a.  In his supervisory role, to date, has failed to ensure a correct body position for Samara Cooks for the Florida Traffic Crash Report or the Traffic Homicide Investigation Report, but rather approved them as accurate;

b.  failed to establish, implement, or enforce policies and procedures to adequately prevent confusion of bodies and ensure protection of surviving family members' rights to the bodies of their deceased family member;

c.  failed to establish, implement, or enforce policies and procedures to adequately ensure preservation of the body of an organ donor;

d.  failed to establish and maintain a liaison with the District One Medical Examiner's Office to ensure proper communication and, in this particular case, to accurately identify the bodies of Deleigha Gibson and Samara Cooks, as required by the Florida Highway Patrol Traffic Homicide Investigations Policy Manual;

e.  failed to take precautions to ensure proper identification of the body

of Samara Cooks, and treatment of her body with dignity and respect,

as required by Fla. Stat. § 497.386(4), and protection of Plaintiff's

constitutionally protected rights in the body of her deceased daughter.

146.  After Defendant Padgett committed the acts delineated in the

preceding paragraph and as a direct and proximate result of his conduct, Plaintiff

suffered severe emotional distress such that no reasonable person could be

expected to endure it.

147.  These outrageous actions by Defendant Padgett have directly and

proximately caused actual, direct, incidental, consequential, and special damages to

Plaintiff including, but not limited to, nightmares and visions of her daughter's

mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain,

suffering, and mental anguish.

148.  In the abundance of caution, Plaintiff has  complied with all conditions

precedent to filing this action.  Specifically, Notices of Claim were served pursuant

to Fla.Stat. Section 768.28(6)(a)(2019).

## FOURTEENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Andrea Minyard

149.  Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4

through 41 above as if specifically set out herein.

150. Defendant Andrea Minyard either intended to inflict emotional distress on Plaintiff by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Minyard was extreme and outrageous:

a. failed to accurately identify the body of Samara Cooks as such;

b. failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that she learned that her office did not have the body of "Jane Smith" but rather the body of Samara Cooks, and despite the DAVID report including a photo of Deleigha Gibson, who looked nothing like Samara Cooks, who was tagged as Deleigha;

c. enacted policies which prevented the Plaintiff from viewing the body of Samara Cooks, an action that, had it been allowed, would have ensured accurate identification of Samara Cooks' body;

d. failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing—to properly identify her body or verify her identity with Plaintiff;

e. failed to ensure proper preservation of the body of Samara Cooks;

f. failed to properly tag or label or identify the body of Samara Cooks;

g.  released the body of Samara Cooks to Tracy Morton Memorial Chapel without authorization;

h.  proceeded or allowed Defendant Gallagher to proceed with autopsies on the wrong bodies;

i.  failed to take precautions to ensure proper identification of the body of Samara Cooks, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiff's constitutionally protected rights in the body of her deceased daughter;

j.  failed to comply with her office's mission statement to "[t]reat bereaved families with respect, sensitivity and consideration" or to "[p]rovide families and loved ones of decedents with timely reports and explanations";

k.  failed to establish and/or implement policies and procedures to ensure proper identification of the deceased;

l.  failed to establish and/or implement policies and procedures to ensure protection of surviving family members' rights with regard to the bodies of their deceased family member;

m. failed to communicate with any member of the Florida Highway Patrol to ensure proper identification;

   n.  failed to provide Florida Highway Patrol with the fingerprint cards of

       the deceased so that the fingerprints could be forwarded to the

       appropriate agency for identification purposes; and,

   o.  failed to accurately document Samara Cooks' autopsy report and/or

       Death Certificate.

151.   After Defendant Minyard committed the acts delineated in the

preceding paragraph and as a direct and proximate result of her conduct, Plaintiff

suffered severe emotional distress such that no reasonable person could be

expected to endure it.

152.   These outrageous actions by Defendant Minyard have directly and

proximately caused actual, direct, incidental, consequential, and special damages to

Plaintiff including, but not limited to, nightmares and visions of her daughter's

mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain,

suffering, and mental anguish.

153.   In the abundance of caution, Plaintiff has  complied with all

conditions precedent to filing this action.  Specifically, Notices of Claim were

served pursuant to Fla.Stat. Section 768.28(6)(a)(2019).

## FIFTEENTH CAUSE OF ACTION

### Tort of Outrage by Defendant Timothy Gallagher

154.    Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

155.    Defendant Timothy Gallagher either intended to inflict emotional distress on Plaintiff by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Gallagher was extreme and outrageous:

a.  failed to accurately identify the body of Samara Cooks as such;

b.  failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that he learned that his office did not have the body of "Jane Smith" but rather the body of Samara Cooks, and despite the DAVID report including a photo of Deleigha Gibson, who looked nothing like Samara Cooks, who was tagged as Deleigha;

c.  failed to use Deleigha's unique markings or piercings—a cross tattoo on her wrist and a belly button piercing—to properly identify her body or verify her identity with Plaintiff;

d.  failed to ensure proper preservation of the body of Samara Cooks;

e.  failed to properly tag or label or identify the body of Samara Cooks;

f.  released the body of Samara Cooks to Tracy Morton Memorial Chapel without authorization;

g.  proceeded with autopsies on the wrong bodies;

h.  failed to take precautions to ensure proper identification of the body of Samara Cooks, and treatment of her body with dignity and respect, as required by Fla. Stat. § 497.386(4), and protection of Plaintiff's constitutionally protected rights in the body of her deceased daughter;

i.  failed to comply with the mission statement to "[t]reat bereaved families with respect, sensitivity and consideration" or to "[p]rovide families and loved ones of decedents with timely reports and explanations";

j.  failed to follow policies and procedures that would ensure proper identification of the deceased;

k.  failed to follow policies and procedures that would ensure protection of surviving family members' rights with regard to the bodies of their deceased family member;

l.  failed to communicate with any member of the Florida Highway Patrol to ensure proper identification;

67

m. failed to provide Florida Highway Patrol with the fingerprint cards of the deceased so that the fingerprints could be forwarded to the appropriate agency for identification purposes; and,

n. failed to accurately document Samara Cooks' autopsy report and/or Death Certificate.

156.     After Defendant Gallagher committed the acts delineated in the preceding paragraph and as a direct and proximate result of his conduct, Plaintiff suffered severe emotional distress such that no reasonable person could be expected to endure it.

157.   These outrageous actions by Defendant Gallagher have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiff including, but not limited to, nightmares and visions of her daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

158.   In the abundance of caution, Plaintiff has  complied with all conditions precedent to filing this action.  Specifically, Notices of Claim were served pursuant to Fla.Stat. Section 768.28(6)(a)(2019).

# SIXTEENTH CAUSE OF ACTION

## Tort of Outrage by Defendant Gulf Coast Autopsy Physicians, P.A.

159.  Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

160.  Defendant Gulf Coast Autopsy Physicians, P.A. either intended to inflict emotional distress on Plaintiff by committing the acts described below or knew or should have known that emotional distress was likely to result from these actions. The following conduct by Defendant Gulf Coast Autopsy was extreme and outrageous:

    a.  Employees and/or agents failed to accurately identify the body of Samara Cooks as such;

    b.  employees and/or agents failed to conduct any investigation into the identities of the two young women despite notation by body removal that the bodies were only "believed to be" Deleigha Gibson and "Jane Smith," despite the fact that she learned that her office did not have the body of "Jane Smith" but rather the body of Samara Cooks, and despite the DAVID report including a photo of Deleigha Gibson, who looked nothing like Samara Cooks, who was tagged as Deleigha;

    c.  enacted and implemented policies which prevented the Plaintiff from viewing the body of Samara Cooks, an action that, had it been

allowed, would have ensured accurate identification of Samara
Cooks' body;

d.  employees and/or agents failed to use Deleigha's unique markings or
    piercings—a cross tattoo on her wrist and a belly button piercing—to
    properly identify her body or verify her identity with Plaintiff;

e.  employees and/or agents failed to ensure proper preservation of the
    body of Samara Cooks;

f.  employees and/or agents failed to properly tag or label or identify the
    body of Samara Cooks;

g.  employees and/or agents released the body of Samara Cooks to Tracy
    Morton Memorial Chapel without authorization;

h.  employees and/or agents failed to take precautions to ensure proper
    identification of the body of Samara Cooks, and treatment of her body
    with dignity and respect, as required by Fla. Stat. § 497.386(4), and
    protection of Plaintiff's constitutionally protected rights in the body of
    her deceased daughter;

i.  failed to comply with their mission statement to "[t]reat bereaved
    families with respect, sensitivity and consideration" or to "[p]rovide
    families and loved ones of decedents with timely reports and
    explanations";

j.   failed to establish and/or implement policies and procedures to ensure proper identification of the deceased;

k.   failed to establish and/or implement policies and procedures to ensure protection of surviving family members' rights with regard to the bodies of their deceased family member; and,

l.   failed to liaise with any member of the Florida Highway Patrol to ensure proper identification.

161.   After Defendant Gulf Coast Autopsy committed the acts delineated in the preceding paragraph and as a direct and proximate result of its conduct, Plaintiff suffered severe emotional distress such that no reasonable person could be expected to endure it.

162.   These outrageous actions by Defendant Gulf Coast Autopsy have directly and proximately caused actual, direct, incidental, consequential, and special damages to Plaintiff including, but not limited to, nightmares and visions of her daughter's mutilated remains, loss of appetite, recurring night terrors, anxiety, stress, pain, suffering, and mental anguish.

163.   In the abundance of caution, Plaintiff has  complied with all conditions precedent to filing this action.  Specifically, Notices of Claim were served pursuant to Fla.Stat. Section 768.28(6)(a)(2019).

## SEVENTEENTH CAUSE OF ACTION

### Breach of Contract by Defendant Faith Chapel Funeral Services, LLC

164.   Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

165.   Plaintiff entered into a valid and binding Contract with Defendant Faith Chapel Funeral Services, LLC for the embalmment, visitation, and funeral services for Samara Cooks.

166.   Plaintiff conformed her actions to meet the bounds of the agreement and performed under the terms of the contract.

167.   Defendant Faith Chapel received valuable consideration to perform the services outlined in the contract.

168.   The parties contemplated, by entering into the Contract, that Defendant Faith Chapel would perform embalming services and other preparation on the body of Samara Cooks.

169.   The parties contemplated that Defendant Faith Chapel would prepare the body in a manner that was satisfactory to the family of Samara Cooks.

170.   The parties contemplated that Defendant Faith Chapel would provide funeral services and treat the family of Samara Cooks with dignity and respect to honor Plaintiff's daughter and her memory.

171.   Defendant Faith Chapel breached the terms of the Contract by failing to carry out the initial embalmment on the actual body of Samara Cooks, by failing to meet the standards agreed upon in the preparation of Samara Cooks' body, by failing to treat Samara Cooks' family with dignity and respect, and by desecrating Samara Cooks' body before her burial.

172.   Plaintiff was damaged by not receiving the consideration under the Contract, namely the actual embalmment of her daughter, a proper preparation of her body, and dignified and respectful services for Plaintiff.

173.   Despite Plaintiff's performance, Defendant Faith Chapel refused to perform its consideration to provide services and breached its valid Contract with Plaintiff.

## EIGHTEENTH CAUSE OF ACTION

### Respondeat Superior against Defendant Tracy Morton Memorial Chapel, LLC

174.   Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

175.   At the time and place above described, and at all times relevant to actions forming the basis of this Complaint, employees and/or agents of Defendant Tracy Morton were acting within the line and scope of their employment and/or with the express authority of Defendant Tracy Morton.

176.   Plaintiff avers that any recklessness or wantonness or outrageous behavior which may be attributable to employees and/or agents of Defendant Tracy Morton is imputable to Defendant Tracy Morton by virtue of the doctrine of respondeat superior in as much as these employees and/or agents, at the time and place described above, were acting in the furtherance and within the scope of its duties with Defendant Tracy Morton.

## NINETEENTH CAUSE OF ACTION

### Respondeat Superior against Defendant
### Faith Chapel Funeral Services, LLC

177.   Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

178.   At the time and place above described, and at all times relevant to actions forming the basis of this Complaint, employees and/or agents of Defendant Faith Chapel were acting within the line and scope of their employment and/or with the express authority of Defendant Faith Chapel.

179.   Plaintiff avers that any recklessness or wantonness or outrageous behavior which may be attributable to employees and/or agents of Defendant Faith Chapel is imputable to Defendant Faith Chapel by virtue of the doctrine of respondeat superior in as much as these employees and/or agents, at the time and place described above, were acting in the furtherance and within the scope of its duties with Defendant Faith Chapel.

## TWENTIETH CAUSE OF ACTION

### Respondeat Superior against Defendant
### Gulf Coast Autopsy Physicians, P.A.

180.   Plaintiff realleges and incorporates by reference paragraphs 1, 2, and 4 through 41 above as if specifically set out herein.

181.   At the time and place above described, and at all times relevant to actions forming the basis of this Complaint, employees and/or agents of Defendant Gulf Coast Autopsy were acting within the line and scope of their employment and/or with the express authority of Defendant Gulf Coast Autopsy.

182.   Plaintiff avers that any recklessness or wantonness or outrageous behavior which may be attributable to employees and/or agents of Defendant Gulf Coast Autopsy is imputable to Defendant Gulf Coast Autopsy by virtue of the doctrine of respondeat superior in as much as these employees or agents, at the time and place described above, were acting in the furtherance and within the scope of its duties with Defendant Gulf Coast Autopsy. This Count is not intended to apply to the allegations against Defendant Gulf Coast Autopsy brought pursuant to 42 U.S.C. § 1983.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against the Defendants on each of the above-referenced claims and causes of action and as follows:

    a.   A trial by jury as to all issues;

b.  An award of compensatory damages to Plaintiff for non-economic damages including but not limited to past and future pain, suffering, emotional distress, loss of enjoyment of life, and for any economic damages including but not limited to past and future medical expenses, out of pocket expenses, and other economic damages in an amount to be determined at trial of this action;

c.  Pre-judgment interest;

d.  Post-judgment interest;

e.  An award of reasonable attorneys' fees;

f.  The costs of these proceedings; and

g.  Such other and further relief as this Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has been furnished to Vickie A. Gesellschap, Esquire, Sniffen and Spellman, P.A., 700 South Palafox Street, Suite 95, Pensacola, Florida 32502, by email to vgesellschap@sniffenlaw.com; Elmer C. Ignacio, Esquire, and Matthew C. Carson, Esquire, Sniffen and Spellman, P.A., 123 North Monroe Street, Tallahassee, Florida 32301, by email to eignacio@sniffenlaw.com, and

mcarson@sniffenlaw.com, Millard L. Fretland, Esquire, Conroy Simberg, 125 West Romana Street, Suite 320, Pensacola, Florida 32502, by email to eservicepns@conroysimberg.com and mfretland@conroysimberg.com, Linda H. Wade, Esquire, Wade, Palmer & Shoemaker, P.A., 14 North Palafox Street, Pensacola, FL 32501, by email to lwade@wpslawyers.com and kgrover@wpslawyers.com, and bcross@wpslawyers.com, and Thomas F. Gonzalez, Esquire, Charles T. Wiggins, Esquire, and Jena M. Wise, Esquire, Beggs & Lane, RLLP, 501 Commendencia Street, Pensacola, Florida 32502, by email to tfg@beggslane.com, ctw@beggslane.com, jw@beggslane.com, rlf@beggslane.com, and dnn@beggslane.com, this _22_ day of April, 2021.

Arthur A. Shimek
Arthur A. Shimek, P.A.
423 North Baylen Street
Pensacola, FL 32501
(850) 434-7995
Florida Bar No. 436844
Attorney for Plaintiff